**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAN BAILEY, | No.  2:18-CV-0055-KJM-DMC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ENLOE MEDICAL CENTER, | |
| Defendant. | |

Plaintiff, who is proceeding pro se, brings this civil action for wrongful termination.  The original complaint, filed in the Butte County Superior Court in December 2017, was removed to this Court based on federal question jurisdiction. See ECF No. 1 (Notice of Removal).  Defendant contends the matter presents a federal question because Plaintiff's claims require substantial interpretation of a collective bargaining agreement between an employer and a union, which is governed under the Labor Management Relations Act.  See id. at 3.

Pending before the Court is Defendant's motion to dismiss Plaintiff's second amended complaint.  See ECF No. 62.

/ / /

/ / /

/ / /

/ / /

# I.  PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's second amended complaint against Defendant Enloe Medical Center.  See ECF No. 61.  According to Plaintiff, the action arises from "retaliation against PLAINTIFF for reporting a patient safety concern and possible misconduct." Id. at 1.  Plaintiff states he was employed as a "CT Technologist Assistant" in the Radiology Department for nearly eleven years.  Id. at 2.  On the morning of November 25, 2015, Plaintiff states he "discovered what he believed was a severe safety concern involving a vulnerable ER patient with a documented. . . . severe allergy to Iodinated IV Contrast Media. . . ."  Id.  Plaintiff states the patient had just undergone a CT scan involving an IV injection of this contract media just moments before.  See ECF No. 61, pg. 2.  Plaintiff next states:

> PLAINTIFF reported to what he in good faith believed to be, the proper chain of command, the on-duty attending Emergency Room Nurse, Ordering ER Physician, Attending Radiologist, and RN House Supervisor, with whom he also voiced concern of future retaliatory action for reporting the safety concern.

Id.

According to Plaintiff, on November 25, 2015, he had been asked to "help at the Front Desk area."  Id.  Plaintiff appears to deny that he was ever formally reassigned and states that he had never "reassigned" during his tenure with Defendant Enloe Medical Center.  See id.

Plaintiff alleges that at all times on November 25, 2015, he had lawful authority and reason to access patient records "for patient treatment, payment, or healthcare operations." Id.  He adds that "[a]ll medical records accessed on November 25, 2015, were only in the line of his duty to '*patient treatment, payment, or healthcare operations including, the select five patients EMC alleges he accessed in violation of medical privacy or HIPAA.*'"  Id. at 2-3 (italics in original).

Next, Plaintiff states that Defendant acted in bad faith "with unknown ulterior motives" in "suppressing the truth" by denying him access to the Radiology Department Manager or Director during the initial internal investigation into his access of patient records on November 25, 2015.  Id.  Plaintiff also claims Defendant's upper management "intentionally avoided having the PLAINTIF's direct supervising Manager and Director over him present during the

2

investigation."  ECF No. 61, pg. 3. Plaintiff further contends Defendant acted in bad faith "when declining to meet with the mediator during the Union grievance process."  Id.

Plaintiff also alleges that Defendant wrongly denied him access to unemployment benefits, alleging Plaintiff was terminated for misconduct.  See id.  According to Plaintiff, he ultimately prevailed in his unemployment appeal to the State of California Unemployment Insurance Appeals Board, which ruled that Plaintiff "was discharged for reasons other than misconduct connected with his most recent work."  Id. at 3-4 (citing a March 18, 2016, decision in case no. 5656295).

Plaintiff alleges the following more specific facts:

1. Plaintiff began his employment with Defendant Enloe Medical Center on February 1, 2005, as a Computerized Tomography Technologist Assistant (CT Tech Assistant).  See id. at 9.

2. At that time, Plaintiff was assigned to the CT Department within the Radiology Department, where he "officially remained" through the date of termination.  Id.

3. Plaintiff was never reassigned to any other duty classification or department.  See id.

4. Plaintiff's supervisors were Radiology Director P. Pooley and Radiology Manager J. Crawford.  See id. at 10.

5. S. Fredricks was never Plaintiff's supervisor and Plaintiff was never his employee.  See id.

6. On the day of November 25, 2015, both the Radiology Manager and Radiology Supervisor left early in the afternoon.  See id.

7. On November 25, 2015, S. Fredricks was the Lead Computerized Tomography Technologist.  See id.

8. S. Fredricks was without managerial or supervisorial control of anyone – including Plaintiff – in the Radiology Department.

9. On November 25, 2015, Plaintiff and two other CT Techs – G. Mayfield and P. Davis – were assigned to the Radiology Department. See id.

10. Plaintiff's regular duties included accessing patient information, screening select information, printing reports, documenting and processing exam orders, and coordinating patient transport.  See id. at 11.

11. At all times, Plaintiff was subject to Enloe Medical Center's "Health Care Compliance Program – Code of Conduct."  Id.

3

12.    The Code of Conduct required Plaintiff to "report suspected misconduct." ECF No. 61, pg. 12.

13.    Enloe Medical Center employees have entered into a collective bargaining agreement with the United Healthcare Workers – West effective July 1, 2015. See id. at 13.

14.    At all relevant times, Plaintiff was a union member subject to the collective bargaining agreement. See id.

15.    On November 25, 2015, G. Mayfield asked Plaintiff to assist an overwhelmed colleague at the front desk area with high call volume. See id.

16.    G. Mayfield had no managerial or supervisorial control over Plaintiff on November 25, 2015. See id.

17.    Plaintiff was never informed by anyone that, during the time he was assisting at the front desk, he would not also remain responsible for his primary duties. See id.

18.    The first time Plaintiff was ever informed that management considered his role at the front desk a "reassignment" was on December 5, 2015, during an interview with C. Linscheid, the Vice President of Human Resources and Chief Compliance Officer, and B. Boggs, the Risk and Compliance Manager and Privacy Officer. See id.

19.    At no time on November 25, 2015, was Plaintiff ever informed that he was being "reassigned" to the front desk. See id. at 14.

20.    The "Front Desk" is not a title, duty, or position, but a room containing a U-shaped wooden desk. See id.

21.    Patient Support Clerks who normally sit at the "front desk" have the same limited access to the Patient Care Information System. See id.

22.    At no time on November 25, 2015, was Plaintiff ever informed that a request for his assistance at the front desk would mean that he no longer had responsibilities regarding patient flow in the CT area. Id. at 14.

23.    Plaintiff was never "floated" to a "temporary assignment" within the meaning of the collective bargaining agreement. See id. at 15.

24.    Plaintiff was never provided the required two-week orientation for "temporary assignment" at the front desk area of the Radiology Department. See id.

25.    Mayfield had no authority to transfer or assign Plaintiff to a different department or job. See id.

26.    Upon accepting additional tasks at the front desk, Plaintiff continued his responsibilities at a CT Tech Assistant. See id.

4

27. On November 25, 2015, Plaintiff accessed confidential patient information "for more than nine patients to verify readiness, allergies, prior exams, pregnancy, previous visits, or requested reports, and printed disks in the same manner he always did. ECF No. 61, pg. 16.

28. In Plaintiff's mind, he had the same duties as always and had the same access to patient information as he always did. See id.

29. At 11:42 a.m. on November 25, 2015, Plaintiff notified ER patient #3775's nurse that Lead CT S. Fredricks "may have made a potentially dangerous error, by injecting Iodinated IV Contrast Media into patient #3775 without acknowledging or documenting the severe allergy to Iodinated IV Contrast Media listed in the medical chart. See id.

30. Plaintiff noted that the accompanying documentation for patient #3775 was incomplete and lacked post-procedure stats and vital signs, which was a clear violation of Enloe Medical Center's policy, procedure, and standard protocol. See id. at 16-17.

31. Plaintiff was aware of and had handled the exam requisition for patient #3775 ordered at 10:06 a.m. on November 25, 2015, before being asked to help the front desk area. See id. at 17.

32. Plaintiff was first alerted to the potential safety concern when he noticed a recently performed exam on patient #3775 was not correctly processed and transferred to the Radiology reading room at approximately 11:37 a.m.; the exam had been performed at approximately 11:19 a.m. Id.

33. Plaintiff states that he was a member in good standing of the union when he was terminated. See id.

34. Plaintiff states that he was terminated on December 11, 2015, for "unlawful privacy breach" stemming from his access of patient records on November 25, 2015. Id.

35. Plaintiff appealed the denial of unemployment benefits and, on March 18, 2016, Administrative Law Judge Keith Sakimura determined that Plaintiff "was discharged for reasons other than misconduct connected with his most recent work." Id. at 18 (citing Ruling of the California Unemployment Insurance Appeals Board in case no. 5656295).

36. Plaintiff states he attempted to pursue a grievance through the union, but that Enloe Medical Center declined to participate in mediation. See id.

37. Plaintiff states his grievance was ultimately withdrawn by the union because it concluded "WEIU UHW ("the Union") does not believe that we are likely to prevail in arbitration. . . ." Id. at 18-19. (citing a March 4, 2016, letter from Marcus Hatcher, a union representative).

38. On March 8, 2016, Plaintiff filed an appeal and, on March 9, 2016, Plaintiff received confirmation of an appeal hearing set for April 20, 2016. See id. at 19.

39.     Plaintiff attended the appeal hearing on April 20, 2016. See ECF No. 61, pg. 19.

40.     Plaintiff states that, on April 27, 2016, he received a decision from the union appeal panel concluding he had the right to proceed with arbitration because "your employer failed to provide just cause for termination. . . ." Id. (citing appeal panel's decision).

41.     On June 1, 2016, Plaintiff states he received notice of a second appeal panel hearing due to "new information," which Plaintiff states is false information provided by Enloe Medical Center. Id.

41.     Plaintiff states the "new information" was contained in a May 26, 2016, email from C. Linscheid. Id.

42.     Plaintiff appeared for a second appeal hearing on June 20, 2017, to answer questions relating to the "new information." Id.

43.     On July 19, 2016, Plaintiff received a second appeal panel decision reversing the prior decision. See id.

Plaintiff alleges eight claims for relief as follows:

| | |
|---|---|
| First Claim | Wrongful termination in violation of public policy, California Labor Code § 232.5. |
| Second Claim | Wrongful termination in violation of public policy, California Labor Code § 1102.5. |
| Third Claim | Breach of contract and implied covenant of good faith and fair dealing. |
| Fourth Claim | Breach of contract and implied covenant of good faith and fair dealing. |
| Fifth Claim | Breach of contract and implied covenant of good faith and fair dealing. |
| Sixth Claim | Unfair business practices, California Business & Professions Code § 17200, et seq. |
| Seventh Claim | Defamation. |
| Eighth Claim | Slander. |

See id. at 23-48.

/ / /

/ / /

/ / /

/ / /

## II.  STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

/ / /

/ / /

1    In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

2    outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

3    Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

4    documents whose contents are alleged in or attached to the complaint and whose authenticity no

5    party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

6    and upon which the complaint necessarily relies, but which are not attached to the complaint, see

7    Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

8    of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

9    1994).

10    Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

11    amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

12    curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

13

14                              **IV.  DISCUSSION**

15    In its motion to dismiss, Defendant argues: (1) Plaintiff's third claim should be

16    dismissed because it is preempted and time-barred; (2) Plaintiff's fourth and fifth claims should

17    be dismissed because Plaintiff has not alleged contractual obligations separate from his third

18    claim, which is preempted and time-barred; and (3) Plaintiff's seventh and eighth claims should

19    be dismissed because they are time-barred and the alleged defamatory statements are privileged,

20    not defamatory, or substantially true.  See ECF No. 62, pgs. 12-21.  Defendant does not seek

21    dismissal of Plaintiff's first, second, or sixth claims.

22          **A.**      **Contract Claims**

23    Plaintiff raises three claims – the third, fourth, and fifth claims – based on alleged

24    breach of contractual obligations.  Defendant contends Plaintiff's third claim is preempted and

25    time-barred, and that Plaintiff's fourth and fifth claims fail to allege any contractual obligations

26    separate from that alleged in the third claim, which is preempted and time-barred.

27    / / /

28    / / /

When resolution of an employee's state law claim depends on the meaning of a collective bargaining agreement, the claim is preempted by federal labor law.  See Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 405-06 (1988).  In Lingle, the High Court considered an employee's Illinois state law claim for retaliatory discharge.  See id. at 401.  In framing the issue, the Supreme Court stated:

> The Court of Appeals agreed that the state law claim was preempted by [Section] 301.  In an en banc pinion, over the dissent of two judges, it rejected petitioner's argument that the tort action was not "inextricably intertwined" with the collective bargaining agreement because the disposition of a retaliatory discharge claim in Illinois does not depend upon an interpretation of the agreement; on the contrary, the court concluded that "the same analysis of the facts" was implicated under both procedures.  823 F.2d at 1046.  It took note of, and declined to follow, contrary decisions in the Tenth, Third, and Second Circuits.  We granted certiorari to resolve the conflict in the Circuits.  484 U.S. 895 (1987).

> Lingle, 399 U.S. at 402-03.

In resolving the conflict, the Supreme Court settled on the following rule: "Thus, Lueck faithfully applied the principle of 301 preemption developed in Lucas Flour: if the resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state law principles as there are States) is preempted and federal labor law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute."  Id. at 405-06 (referencing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), and Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962)).

Preempted state law claims are properly styled as a "hybrid § 301/fair representation claim," subject to a six-month statute of limitations under Section 301 of the National Labor Relations Act.  See DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151, 164-165, 169-172 (1983).

/ / /

/ / /

/ / /

/ / /

/ / /

1           1.    <u>Third Claim</u>

In his third claim, Plaintiff alleges the following facts:

      1.    At all times, Defendant Enloe Medical Center had in place a collective bargaining agreement with the Service Employees International Union – United Healthcare Workers West (SEIU) effective July 1, 2015.  <u>See</u> ECF No. 61, pg. 32.

      2.    Plaintiff was a member of SEIU in good standing at all times relevant to the complaint and, as such, was a third-party beneficiary to the collective bargaining agreement.  <u>See</u> <u>id.</u>

      3.    Defendant violated the collective bargaining agreement by terminating Plaintiff without just cause.  <u>See</u> <u>id.</u> at 33.

      4.    Defendant further violated the collective bargaining agreement by not following the agreements procedures and guidelines for progressive discipline.  <u>See</u> <u>id.</u>

      5.    Defendant further violated the collective bargaining agreement by not fairly investigating and disclosing all facts surrounding Plaintiff's termination.  <u>See</u> <u>id.</u>

Defendant argues Plaintiff's third claim should be dismissed with prejudice because it is preempted and time-barred under federal law.  According to Defendant:

BAILEY's third cause of action asserts two claims: (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing. ECF 61, ¶¶ 228-240. For the reasons detailed below, these claims are exclusively governed by Section 301 [of the National Labor Relations Act], and are time-barred under its six-month statute of limitations.

In support of this cause of action (and its two claims), BAILEY alleges in the SAC that ENLOE violated the SEIU-UHW CBA by terminating him without "just cause," without following the CBA's guidelines for progressive discipline, and by refusing to fairly investigate and disclose all facts surrounding his termination. *Id.* at ¶¶ 229-239.

Accordingly, BAILEY's third cause of action is preempted by Section 301 because the resolution of each of its claims (breach of contract and breach of the covenant of good faith and fair dealing) requires the interpretation or application of a collective bargaining agreement. *See Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles -- necessarily uniform throughout the Nation -- must be employed to resolve the dispute."); *Young v. Anthony's Fish Grottos, Inc*., 830 F.2d 993, 997 (9th Cir. 1987) ("[t]he preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement"). The United States Supreme Court has instructed that an employee's claims for breach of a collective bargaining agreement must be brought as a "hybrid § 301/fair representation claim" and the statute of limitations for such claims is six months. *DelCostello v. Int'l Bhd. Of*

1    *Teamsters*, 462 U.S. 151, 164-165, 169-172 (1983).

2               Here BAILEY's original Complaint was filed December
     11, 2017. ECF Dkt. 1. His employment with ENLOE was terminated on
3    December 11, 2015, and SEIU-UHW informed him that his grievance was
     being withdrawn on July 19, 2016. ECF 61, ¶¶ 113, 126-127. Thus, the
     only two temporal points from which BAILEY's breach claims (contained
4    in the third cause of action) could have accrued occurred more than a year
     before the original Complaint was filed – and both are well outside the
5    six-month statute of limitations. For these reasons, BAILEY's third cause
     of action is time-barred and should be dismissed. *See Sams,* 713 F.3d at
6    1179 (dismissal for failure to state a claim proper when the allegations in
     the complaint suffice to establish some bar to recovery or an affirmative
7    defense).

8         ECF No. 62, pgs. 12-13.

9         Here, Plaintiff's third claim necessarily requires interpretation of the collective

10   bargaining agreement between Defendant and the union, to which Plaintiff alleges he is a third-

11   party beneficiary.  See ECF No. 61, pg. 32.  As Plaintiff also states in the second amended

12   complaint, the claim is based on three alleged violations of provisions in the collective bargaining

13   agreement – the provision that union employees cannot be terminated except for just cause; the

14   provision that termination follow a progressive disciplinary protocol; and the provision requiring

15   a fair investigation. See ECF No. 61, pg. 32-33.  These allegations cannot be separated from the

16   specific provisions of the collective bargaining agreement as issue.  Plaintiff's third claim is,

17   therefore, preempted by federal labor law.  See Lingle, 486 U.S. at 405-06.

18         Applying federal labor law, the Court also agrees that Plaintiff's claim is time-

19   barred.  As Defendant notes, Section 301 of the National Labor Relations Act imposes a six-

20   month limitations period.  See DelCostello, 462 U.S. at 154-54; see also 29 U.S.C. § 160(b).

21   Plaintiff alleges he was terminated in December 2015, see ECF No. 61, pg. 17, and that his union

22   grievance was ultimately withdrawn in July 2016, see id. at 19.  These are the earliest and latest

23   dates upon which Plaintiff arguably could have first known about his claim.  The Court will give

24   Plaintiff the benefit of the latest date and assume for purposes of Defendant's motion that his

25   claim accrued in July 2016.  Applying a six-month limitations period, the last day for Plaintiff to

26   file his complaint would have been in January 2017.  Plaintiff's complaint, filed in state court in

27   December 2017, see ECF No. 1-1 (original complaint attached to Defendant's Notice of

28   Removal), is untimely.

Defendant's motion to dismiss should be granted as to Plaintiff's third claim, which should be dismissed with prejudice as preempted and time-barred.

    2.   <u>Fourth and Fifth Claims</u>

In his fourth claim, Plaintiff alleges the following facts:

    1.   Plaintiff alleges he and Defendant entered into an agreement entitled "Patient Care Information Systems (PCIS), Internet and Electronic Communications Statement" on January 1, 2005. <u>See</u> ECF No. 61, pg. 34.

    2.   Plaintiff characterizes this agreement as a "non-disclosure agreement" which set out Plaintiff's liability to Defendant for misuse of the PCIS system. <u>See</u> <u>id.</u>

    3.   Plaintiff alleges that, under this agreement, Defendant was required to provide notice to Plaintiff prior to suspending his access privileges. <u>See</u> <u>Id.</u> at 35.

    4.   Plaintiff alleges that, at all times during his employment, he accessed patient record consistent with this agreement. <u>See</u> <u>id.</u> at 36.

In his fifth claim, Plaintiff alleges the following facts:

    1.   As a condition of continued employment, Plaintiff was required to sign a document titled "Enloe Medical Center, Health Care Compliance Program, Code of Conduct." <u>Id.</u> at 36.

    2.   Plaintiff alleges this document required him to report suspected misconduct. <u>See</u> <u>id.</u> at 38.

    3.   Plaintiff further alleges that the document precludes Defendant from terminating his employment for anything other than just cause. <u>See</u> <u>id.</u> at 40.

    4.   Plaintiff alleges Defendant breached this agreement by terminating him despite Plaintiff's adherence to the agreement's reporting requirement and absent just cause. <u>See</u> <u>id.</u> 39.

As to Plaintiff's fourth and fifth claims, Defendant argues the claims should both be dismissed as preempted and time-barred under federal law. According to Defendant:

BAILEY's fourth cause of action also asserts two claims: (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing. ECF 61, ¶¶ 241-256. These claims are based on an alleged violation of ENLOE's Patient Care Information System (PCIS), Internet and Electronic Communications Statement, which BAILEY signed on January 1, 2005. *Id.* at ¶ 242. BAILEY contends that this document constitutes a contract between him and ENLOE akin to a nondisclosure agreement that "set out [BAILEY's] liability to [ENLOE] for misuse of the PCIS system . . . ." *Id.* at ¶ 243. The only contractual obligations

BAILEY alleges ENLOE owed him under this document were: "a duty to give notice to BAILEY that he no longer had access to PCIS confidential patient charts and records," and "a duty to protect and hold [BAILEY] harmless for all access obtained 'for purpose of treatment' and 'healthcare operations." *Id.* at ¶¶ 249, 254. BAILEY's allegations fail to support a cognizable legal theory and state a facially plausible claim for relief for multiple reasons.

BAILEY's claim that the Patient Care Information System (PCIS), Internet and Electronic Communications Statement forms an individual contract governing the terms and conditions of his employment (particularly disciplinary matters) - separate and apart from the SEIU-UHW CBA - is contrary to the law. It is well-settled that "a collective bargaining agreement with respect to terms and conditions of employment prevails over individual contracts between employers and employees concerning these subjects." *Hendricks v. Airline Pilots Ass'n Int'l*, 696 F.2d 673, 675 (9th Cir. 1983). As a SEIU-UHW member, any discipline of BAILEY was governed exclusively by Article 30 of the SEIU-UHW CBA. Exhibit B, SEIU-UHW CBA. (footnote omitted). Rights created by collective bargaining ordinarily can be extinguished only by subsequent collective bargaining. *See Hendricks*, 696 F.2d at 676.

Accordingly, ENLOE's Patient Care Information System (PCIS), Internet and Electronic Communications Statement is not a contract that supplants the SEIU-UHW CBA; it simply sets forth guidelines that can form the basis of "good cause" for a disciplinary action. Exhibit C, Patient Care Information System (PCIS), Internet and Electronic Communications Statement. (footnote omitted). The gravamen of BAILEY's fourth cause of action, therefore, is that ENLOE lacked "just cause" under the SEIU-UHW CBA to terminate his employment because BAILEY's conduct conformed to the guidelines in the Patient Care Information System (PCIS), Internet and Electronic Communications Statement. For these reasons, and as set forth above in the discussion of BAILEY's third cause of action, the claims in the fourth cause of action are time-barred because they are subject to Section 301 and its six-month statute of limitations.

\* \* \*

Like the third and fourth causes of action, BAILEY's fifth cause of action also asserts a claim for breach of contract and a claim for breach of the covenant of good faith and fair dealing. ECF 61, ¶¶ 257-290. These claims are based on an alleged violation of ENLOE's Code of Conduct. *Id.* BAILEY contends that his conduct adhered to and was mandated by various standards set forth in the Code of Conduct. *Id.* BAILEY alleges that ENLOE violated the Code of Conduct by denying that his actions were appropriate under Standard No. 5, and by terminating is employment without "just cause" (under "a ruse that he was 'reassigned' to a different position, and therefore accessing protected patient medical records was prohibited") in violation of the SEIU-UHW CBA. *Id.* at ¶¶ 282-289.

For the same reason as BAILEY's fourth cause of action, his allegations based on the Code of Conduct fail to support a cognizable legal theory and state a facially plausible claim for relief. BAILEY's claim that the Code of Conduct forms an individual contract governing the terms and conditions of his employment (particularly disciplinary matters) - separate and apart from the SEIU-UHW CBA - is contrary to the law.

1
2
3
4
5
6
7
8
9
10
11

> *Hendricks*, 696 F.2d at 676 (a collective bargaining agreement with respect to terms and conditions of employment prevails over individual contracts between employers and employees concerning these subjects). Again, as a SEIU-UHW member, any discipline of BAILEY was governed exclusively by Article 30 of the SEIU-UHW CBA. Rights created by collective bargaining ordinarily can be extinguished only by subsequent collective bargaining. *See Hendricks*, 696 F.2d at 676.
> Accordingly, the Code of Conduct is not a contract that supplants the SEIU-UHW CBA; it simply sets forth principles, policies and procedures that can form the basis of "good cause" for a disciplinary action. Exhibit D, Code of Conduct. The gravamen of BAILEY's fifth cause of action, therefore, is that ENLOE lacked "just cause" under the SEIU-UHW CBA to terminate his employment because BAILEY's conduct conformed to the principles, policies, and procedures in the Code of Conduct. For these reasons, and as set forth above in the discussion of BAILEY's third and fourth causes of action, the claims in the fifth cause of action are time-barred because they are subject to Section 301 and its six-month statute of limitations.

> ECF No. 62, pgs. 13-16.

12
13
14
15
16
17
18
19
20
21
22

Plaintiff's fourth claim is based on alleged breach of the PCIS document, which Plaintiff' characterizes as an "agreement."  See ECF No. 61, pg. 34.  According to Plaintiff, this "agreement" set out Plaintiff's "liability" for misuse of the PCIS system.  See id.  Plaintiff further contends the "agreement" required a specific term and condition to his employment, namely that he be provided notice prior to any suspension of system access.  See id. at 35.  For purposes of Defendant's motion to dismiss, the Court presumes these factual allegations are true.  Presuming the PCIS document created a separate agreement concerning terms and conditions of Plaintiff's employment at Enloe Medical Center, the collective bargaining agreement prevails over any individual contact between an employee and employer.  See Hendricks, 696 F.2d at 675. Plaintiff's fourth claim is, therefore, also preempted by federal labor law.  See Lingle, 486 U.S. at 405-06.

23
24
25
26
27
28

Plaintiff's fifth claim is based on an alleged breach of the Code of Conduct.  See ECF No. 61, pg. 36.  Plaintiff alleges the Code of Conduct imposed terms and conditions on his employment.  See id. Plaintiff further alleges the Code of Conduct precluded Defendant from terminating him for any reason other than good cause.  See id. at 40.  Plaintiff alleges Defendant breached the Code of Conduct by terminating without good cause.  See id. at 39.  These allegations, which the Court presumes are true for purposes of Defendant's motion to dismiss,

1    squarely relate to terms and conditions of Plaintiff's employment and termination thereof by

2    Defendant Enloe Medical Center.  As such, Plaintiff's fifth claim is also preempted.  See Lingle,

3    486 U.S. at 405-06.

4            Applying Section 301's six-month limitations period, the Court also concludes that

5    Plaintiff's fourth and fifth claims are time-barred.  Plaintiff alleges he and Defendant entered into

6    the PCIS "agreement" in January 2005.  See ECF No. 61, pg. 34.  He alleges he entered into the

7    Code of Conduct as a condition of his continued employment.  See id. at 36.  Plaintiff also alleges

8    that he was terminated on December 11, 2015, for breaching patient privacy.  See id. at 17.  The

9    Court presumes these allegations are true for purposes of Defendant's motion to dismiss.  Further,

10   the Court will give Plaintiff the benefit of the doubt and presume that any breach of the PCIS

11   "agreement" or Code of Conduct coincided with Plaintiff's termination.  The Court will go one

12   step further and presume Plaintiff's fourth and fifth claims accrued on the latest date possible –

13   the date on which his union grievance concerning his termination was ultimately withdrawn in

14   July 2016.  Consistent with the Court's analysis above, Plaintiff's fourth and fifth claims are time-

15   barred under Section 301 of the National Labor Relations Act.  See DelCostello, 462 U.S. at 154-

16   54; see also 29 U.S.C. § 160(b).

17           Defendant's motion to dismiss should be granted as to Plaintiff's fourth and fifth

18   claims, which should be dismissed with prejudice as preempted and time-barred.

19        **B.    Defamation Claims**

20           In his seventh and eighth claims, Plaintiff asserts causes of action for defamation.

21   Defendant contends these claims should be dismissed because they are time-barred and the

22   alleged defamatory statements are privileged, not defamatory, or substantially true.

23           Under California law, the tort of defamation involves (1) an intentional publication

24   that (2) is false and (3) unprivileged and (4) has a natural tendency to injure or causes special

25   damages.  See Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999); see also Seelig v. Infinity

26   Broadcasting Corp., 97 Cal. App. 4th 798, 809 (2002).  The truth of the statements at issue is an

27   absolute defense against a defamation claim.  See Smith, 72 Cal. App. 4th at 646-47.

28   / / /

1         A communication made in any judicial proceeding or any other official proceeding

2  authorized by law is privileged.  See Cal. Civil Code § 47(b).  Communications made to an

3  official administrative agency are also privileged.  See Martin v. Kearney, 51 Cal. App. 3d 309,

4  311 (1975).  This privilege – called the litigation privilege – extends to private contractual

5  arbitration proceedings.  See Moore v. Canliffe, 7 Cal. 4th 634, 642-44 (1994).  The litigation

6  privilege is not limited to statements made during an official proceeding but also extends to

7  statements made prior to the proceeding if such statements have a logical relation to the

8  proceeding.  See Falcon v. Long Beach Genetics, Inc., 224 Cal. App. 4th 1263, 1272 (2014).  The

9  litigation privilege is broadly applied, and doubts should be resolved in favor of the privilege.

10  See Wang v. Heck, 203 Cal. App. 4th 677, 684 (2012).

11         Defamation claims are subject to a one-year statute of limitations.  See Cal. Civil

12  Code § 340(c); see also Shively v. Bozanich, 31 Cal. 4th 1230, 1246 (2003).  The Court rejects

13  Plaintiff's argument to the contrary.  In his opposition brief, Plaintiff argues California Civil Code

14  § 340(c) does not apply because he is not a minor, bank depositor, or pursuing an action for the

15  death of an animal.  See ECF No 68, pgs. 25-27.  Defendant contends in its reply that Plaintiff

16  simply misreads the statute.  See ECF No. 70, pg. 8.  The Court agrees.

17         Section 340(c) specifies a one-year limitations period for "[a]n action for libel,

18  slander, false imprisonment, seduction of a person below the age of legal consent, or by a

19  depositor against a bank for the payment of a forged or raised check. . . ., or against any person

20  who boards or feeds an animal or fowl or who engages in the practice of veterinary medicine. . .

21  for that person's neglect resulting in injury or death to an animal or fowl. . . ."  Cal. Civil Code §

22  340(c).  A plain reading of the statute indicates that actions for seduction of a minor, actions by a

23  bank depositor, and actions against persons who board animals are separate and distinct from

24  actions for libel and slander.  The California Supreme Court has clearly held that a one-year

25  limitations period applies to defamation actions.  See Shivley, 31 Cal. 4th at 1246 (holding that

26  the applicable statute of limitations for a defamation action is one year under § 340(c)).

27  / / /

28  / / /

Plaintiff's seventh claim is labeled a claim for "defamation" and his eighth claim is labeled a claim for "slander."  Statements made to Plaintiff's union representatives, statements made to the California Employment Development Department, statements made to the California Health and Human Services Agency, and statements made to Cal Fire are alleged in the seventh claim.  Plaintiff alleges in his eighth claim that all the various false statements are slanderous.

    1.   <u>Seventh Claim</u>

In his seventh claim, Plaintiff alleges the following facts:

    1.   Defendant's representatives or agents knowingly informed Plaintiff's union representative that Plaintiff "was not involved in treatment, payment, or operations despite repeated training" and that Plaintiff "was terminated on 12/11/15 for unlawful privacy breach."  ECF No. 62, pg. 44

    2.   Both statements are false.  <u>See</u> <u>id.</u>

    3.   Defendant's representatives or agents knowingly informed Plaintiff's union representative that there was no evidence to support Plaintiff's allegations of wrongdoing with respect to patient #3775.  <u>See</u> <u>id.</u>

    4.   This statement is false.  <u>See</u> <u>id.</u>

    5.   C. Linscheid informed Plaintiff's union director that "[t]wo or three weeks ago Dan [Bailey] was seen coming out of Cal Java, a coffee shop directly across from the hospital; he was wearing scrubs."  <u>Id.</u>

    6.   Plaintiff alleges this statement falsely implied that Plaintiff was "stalking" the hospital.  ECF No. 61, pg. 44.

    7.   Plaintiff claims Defendant published false statements that "caused PLAITIFF to lose his position as a volunteer Firefighter for Butte County with Cal Fire."  <u>Id.</u>

    8.   Defendant's representatives or agents accused Plaintiff of "fraudulent[ly] donning of the firefighter's uniform, and unauthorized entry into the hospital."  <u>See</u> <u>id.</u>

    9.   This statement is false.  <u>See</u> <u>id.</u>

    10.   Defendants published, by speech, email, fax, or some other unknown means, statements causing Plaintiff to lose his job as a volunteer firefighter for Cal Fire.  <u>See</u> <u>id.</u>

    11.   Plaintiff alleges publication of false statements caused Plaintiff to lose his union grievance "by default."  <u>Id.</u> at 45.

/ / /

12.     Plaintiff claims Defendant knowingly published false information to the State of California EDD and State of California Health and Human Services Agency.  See ECF No. 62, pg. 46.

13.     Plaintiff alleges that, as a result of this publication, an adverse decision was reached in his unemployment insurance appeal.  See id.

Plaintiff's seventh claim is based on four categories of alleged statements: statements made to Plaintiff's union representatives, statements made to the California Employment Development Department, statements made to the California Health and Human Services Agency, and statements made to Cal Fire.

a.     Statements Made to Plaintiff's Union Representatives

Defendant argues the seventh claim should be dismissed to the extent it is based on statements made to Plaintiff's union representatives because the claim is time-barred and such statements are privileged.  According to Defendant:

> BAILEY alleges that he initiated his grievance with SEIU-UHW in December 2015 and the grievance was withdrawn on July 19, 2016. ECF 61, ¶¶ 115, 174, 220, 235. He alleges SEIU-UHW withdrew the grievance "as a direct result" of defamatory statements made by ENLOE employees. Id. at ¶¶ 193, 220. That necessarily means the allegedly defamatory communications occurred between these two dates. Moreover, the only communications between ENLOE employees and SEIU-UHW representatives that BAILEY alleges were: (1) an email from Ms. Linscheid to Sabrina Struth on January 28, 2016; and (2) a May 26, 2016, phone call between Ms. Linscheid and Mr. Hatcher, along with a memorializing email Ms. Linscheid sent to Mr. Hatcher that same day. Id. at ¶¶ 119, 124-125, 185, 192, 220-223, 225, 269, 305-307, 309-311, 322, 328-329, 333-336; Exhibit E, Email Linscheid to Hatcher, 5/26/16. BAILEY's causes of action for defamation/slander are subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340(c). BAILEY filed the instant civil action on December 11, 2017. ECF Dkt. 1. Even assuming BAILEY's defamation/slander causes of action qualified for relation back, the alleged communications fall well outside the one-year statute of limitations.
>        Regardless, these communications are absolutely privileged. Cal. Civ. Code § 47(b). The absolute privilege applies to any communication made in any "official proceeding authorized by law." Id. The SEIU-UHW CBA's grievance process is an official proceeding authorized by law. Federal law "requires use of the contract grievance procedure agreed upon by the employer and union as the mode of redress." SEIU United Healthcare Workers – West v. Los Robles Regional Medical Center, 812 F.3d 725, 730 (9th Cir. 2015) (quoting Republic Steel Corp. v. Maddox, 349 U.S. 650, 652 (1965); see also Moore v. Conliffe, 7 Cal. 4th 634, 642-644 (1994) (litigation privilege applied to private contractual arbitration proceedings). The privilege is not limited to statements made during a trial or other proceedings, but extends to steps

18

1

2

3

taken prior thereto. *Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1272 (Cal. Ct. App. 2014). A communication is protected if it has some logical relation to the proceeding. *Id.* The privilege is broadly applied and doubts are resolved *in favor of the privilege*. *Wang v. Heck*, 203 Cal. App. 4th 677, 684 (Cal. Ct. App. 2012).

4

ECF No. 62, pgs. 17-18.

5

The Court agrees that Plaintiff's defamation claim based on statements made to

6

Plaintiff's union representatives between December 2015 and July 2016 are time-barred.  In his

7

seventh claim, Plaintiff alleges that various false statements were made to his union

8

representatives.  See ECF No. 61, pgs. 44-46.  Specifically, Plaintiff claims Defendant or its

9

agents told his union representatives that: (1) Plaintiff "was not involved in treatment, payment,

10

or operations despite repeated training"; (2) Plaintiff "was terminated on 12/11/15 for unlawful

11

privacy breach"; (3) "[t]wo or three weeks ago Dan [Bailey] was seen coming out of Cal Java, a

12

coffee shop directly across from the hospital; he was wearing scrubs"; and (4) Plaintiff

13

"fraudulent[ly] donning of the firefighter's uniform, and unauthorized entry into the hospital."

14

ECF No. 61, pgs. 44-46.  Plaintiff alleges each of these statements is false and that they resulted

15

in his union grievance being withdrawn.  See id.

16

To the extent the false statements alleged in the seventh claim resulted in

17

withdrawal of Plaintiff's union grievance, such statements necessarily were made prior to the

18

grievance being withdrawn in, as Plaintiff alleges elsewhere in the second amended complaint,

19

July 2016.  Thus, sometime in July 2016 would be the last date upon which Plaintiff would have

20

known of the factual basis of his claim.  The instant action was filed in state court in December

21

2017.  See ECF No. 1-1 (original complaint attached to Defendant's Notice of Removal).  Giving

22

Plaintiff the benefit of the doubt and assuming arguendo that Plaintiff's second amended

23

complaint relates back in time to the filing of the original complaint in state court, and applying a

24

one-year limitations period, Plaintiff's complaint was due in July 2017.  Because Plaintiff's

25

complaint was filed in state court in December 2017, Plaintiff's claims based on allegedly false

26

statements made to his union representatives are time-barred.  See Cal. Civil Code § 340(c); see

27

also Shively, 31 Cal. 4th at 1246.

28

/ / /

1    Defendant's motion to dismiss should be granted as to Plaintiff's seventh claim

2  insofar as that claim is based on statements made to Plaintiff's union representatives, which

3  aspect of the seventh claim should be dismissed with prejudice as time-barred.

4    b.    Statements Made to the California Employment Development
        Department

5

6    Defendant contends Plaintiff's seventh claim should be dismissed to the extent it is

7  based on statements made to the California Unemployment Development Department because the

8  claim is time-barred and such statements are privileged.  According to Defendant:

9    BAILEY alleges that he filed for unemployment benefits in
        December 2015 and ENLOE's appeal of an ALJ's finding BAILEY was
10       eligible for benefits was denied on May 26, 2016. ECF 61, ¶¶ 175, 184.
        That necessarily means the allegedly defamatory communications
11       occurred between these two dates. Moreover, the only alleged defamatory
        communications between ENLOE employees and the EDD/CUIAB in the
12       SAC consisted of purportedly false testimony provided to the ALJ
        presiding over BAILEY's appeal hearing on March 18, 2016. *Id.* at ¶¶ 18-
13       19, 268. BAILEY filed the instant civil action on December 11, 2017.
        ECF Dkt. 1. Even assuming BAILEY's defamation/slander causes of
14       action qualified for relation back, the alleged communications fall well
        outside the one-year statute of limitations. Cal. Civ. Proc. Code § 340(c).
15          In any event, these communications are absolutely
        privileged. Cal. Civ. Code § 47(b). The absolute privilege applies to any
16       communication made in any "judicial proceeding" or "any other official
        proceeding authorized by law." *Id.* Communications made to an official
17       administrative agency, whether designed to prompt action or made in the
        course of the agency's investigation and adjudicative activities are
18       absolutely privileged. *Martin v. Kearney*, 51 Cal. App. 3d 309, 311 (Cal.
        Ct. App. 1975); *King v. Borges*, 28 Cal. App. 3d 27, 32 (Cal. Ct. App.
19       1972); *Ascherman v. Natanson*, 23 Cal. App. 3d 861, 866 (Cal. Ct. App.
        1972).
20
     ECF No. 62, pg. 18.
21

22    In his seventh claim, Plaintiff alleges that Defendant, through its agents,

23  knowingly provided false information in the context of his unemployment insurance case.  See

24  ECF No. 61, pgs. 44-46.  Elsewhere in the second amended complaint, Plaintiff alleges that he

25  ultimately prevailed in his unemployment insurance case on March 18, 2016.  See id. at 3-4, 18

26  (citing a March 18, 2016, decision in case no. 5656295).  According to Plaintiff, the State of

27  California Unemployment Insurance Appeals Board ruled that Plaintiff "was discharged for

28  reasons other than misconduct connected with his most recent work."  Id.  Thus, to the extent

1   Defendant or its agents published defamatory statements in the context of Plaintiff's

2   unemployment insurance case, the last date upon which he would have known about his claim

3   was March 18, 2016.  In all likelihood, Plaintiff's claim would have accrued at some earlier point

4   in time coinciding with the initial denial of his unemployment insurance claim.  The Court,

5   however, is willing to give Plaintiff the benefit of the last possible accrual date.

6           Based on an accrual date of March 18, 2016, and assuming again that Plaintiff's

7   second amended complaint relates back to the original complaint commenced in state court in

8   December 2017, Plaintiff's defamation claim based on allegedly false statements made in the

9   context of Plaintiff's unemployment insurance case is time-barred under the applicable one-year

10  statute of limitations.  See Cal. Civil Code § 340(c); see also Shively, 31 Cal. 4th at 1246.

11          Plaintiff's seventh claim also fails to the extent it is based on alleged statements

12  made in the context of Plaintiff's unemployment insurance case because such statements are

13  privileged.  See Cal. Civil Code § 47(b); see also Martin, 51 Cal. App. 3d at 311.

14          Defendant's motion to dismiss should be granted as to Plaintiff's seventh claim

15  insofar as that claim is based on statements made to California Unemployment Development

16  Department, which aspect of the seventh claim should be dismissed with prejudice as time-barred

17  and for failure to state a claim.

18                     c.      Statements Made to the California Health and Human Services
                                Agency
19

20          Defendant argues the seventh claim should be dismissed to the extent it is based on

21  statements made to the California Health and Human Services Agency because the statements are

22  privileged and true.  According to Defendant:

23                  BAILEY correctly alleges that the State of California
            regulates ENLOE's healthcare operations through the California Health
24          and Safety Code. ECF 61, ¶ 197. Specifically, ENLOE is required by law
            to prevent the "unauthorized access to, and use or disclosure of, patients'
25          medical information. . . ." Cal. Health & Safety Code § 1280.15(a). The
            California Health and Human Services Agency, California Department of
26          Public Health (CDPH) is empowered to investigate and assess
            administrative penalties for breaches of patient confidentiality. Id. Further,
27          ENLOE is required by law to report any unauthorized access, use, or
            disclosure of patient medical information within 15 business days after
28          detection of the breach, and faces large penalties for delayed reporting.

                                            21

§ 1280.15(b)-(d).

BAILEY alleges that ENLOE falsely reported to the CDPH that BAILEY "accessed medical records of patients which he had no patient care responsibilities" and BAILEY "did not access the medical records for purposes of treatment, payment or healthcare operations," and ENLOE also made various false and misleading statements to official investigators. ECF 61, ¶¶ 16, 217, 261, 267, 297, 322, 327, 333, 336. These communications are absolutely privileged. Cal. Civ. Code § 47(b). Communications made to an official administrative agency, whether designed to prompt action or made in the course of the agency's investigation and adjudicative activities, are absolutely privileged. *Martin*, 51 Cal. App. 3d at 311; *King*, 28 Cal. App. 3d at 32; *Ascherman*, 23 Cal. App. 3d at 866.

Moreover, ENLOE is not liable for the alleged statements because they were true. *Maldonado*, 72 Cal. App. 4th at 646-647 ("In all cases of alleged defamation, whether libel or slander, the truth of the . . . communication is a complete defense against civil liability . . . [i]t is sufficient if the defendant proves true the substance of the charge, irrespective of slight inaccuracy in the details"). After investigating the matter, CDPH concluded that BAILEY "accessed medical records of five patients without authorization or a business need . . ." and assessed a penalty against ENLOE in the amount of $50,000. ECF 61, ¶ 324; Exhibit F, CDPH Privacy Reporting Form; Exhibit G, CDPH Unauthorized Disclosure/Breach Administrative Penalty Notice; Request for Judicial Notice.

ECF No. 62, pgs. 18-19.

In his seventh claim, Plaintiff alleges Defendant knowingly published false information to the State of California Health and Human Services Agency.  See ECF No. 61, pg. 46.  Specifically, Plaintiff claims Defendant falsely reported to this agency that Plaintiff had improperly accessed patient information.  See id.  As Defendant notes, Enloe Medical Center has a duty under California law to prevent unauthorized access to patient medical information.  See Cal. Health & Safety Code § 1280.15(a).  Defendant Enloe Medical Center is also required to report any unauthorized access of patient medical information to the California Health and Human Services Agency, California Department of Public Health (CDPH), which is empowered to investigate breaches in patient confidentiality.  See id.  Plaintiff alleges in the second amended complaint that Defendant did in fact report to the CDPH that Plaintiff improperly accessed patient medical information and that the CDPH initiated an investigation.  See ECF No. 61, pg. 46.

/ / /

/ / /

/ / /

22

1    The Court does not agree with Defendant that Plaintiff cannot state a claim based

2 on statements made to the CDPH because the statements were true.  Defendant asks the Court to

3 accept as a fact that Plaintiff improperly accessed patient medical records.  See ECF No. 62, pg.

4 19.  Defendant says this fact is established because Enloe Medical Center was assessed a

5 $50,000.00 penalty by the CDPH for the breach, as demonstrated by Plaintiff's own allegation as

6 well as documents which the Court can judicially notice.  See id.

7    The Court will, as it must in assessing the sufficiency of Plaintiff's pleading,

8 presume Plaintiff's allegations are true.  The Court will also for purposes of analysis accept that

9 Plaintiff's allegations are corroborated by documents Defendant asks the Court to judicially

10 notice.  In doing so, however, the only fact established at this juncture is that the CDPH found

11 that Plaintiff breached patient confidentiality.  Perhaps this finding was correct.  Perhaps not.

12 Elsewhere in the second amended complaint, Plaintiff alleges that he ultimately won his

13 unemployment insurance appeal because it was determined that he had been discharged for

14 reasons other than misconduct.  See ECF No. 62, pgs. 3-4, 18 (citing a March 18, 2016, decision

15 in case no. 5656295).  Similarly, this only establishes that the California Unemployment

16 Development Department found that Plaintiff did not breach patient confidentiality, the alleged

17 misconduct at issue.  Again, perhaps this finding was correct.  Perhaps not.  Because both

18 findings cannot be correct, this Court cannot say that the truth of the allegedly defamatory

19 statement – that Plaintiff improperly accessed patient medical records – is established on the face

20 of the second amended complaint.

21    Nonetheless, Plaintiff's allegations make clear that Defendant's statements to the

22 CPDH were made in the context of that agency's statutorily mandated investigation of a potential

23 confidentiality breach.  According to Plaintiff, the California Health and Human Services Agency

24 (HHSA) "found" in a "District Office Approval and Administrative Penalty Data Sheet," filed in

25 "Complaint CA00469431," that "[e]mployee accessed medical records of five patients without

26 authorization or a business need," for which a $50,000.00 penalty was assessed.  ECF No. 61, pg.

27 46 (second amended complaint, ¶ 324).  Plaintiff states that the finding related to a November 25,

28 2015, "[i]ncident date."  Id.  Plaintiff alleges the HSSA also found "[e]mployee was reassigned to

a different department unit in the facility, but continued to monitor patients in the department he

was reassigned from" and "[t]he employee accessed the records of the five patients he was not

treating, nor did he have written authorization or a business need."  Id.  Finally – in terms of

linking Plaintiff's allegations to his legal theory – Plaintiff states that the HHSA's conclusion was

"found from DEFENDANT's defamatory publications. . . ."  Id.

From this, it is reasonable to infer that Plaintiff alleges an official proceeding was

initiated in the HHSA related to Plaintiff accessing patient medical records on November 25,

2015.  The Court can also fairly infer that Plaintiff claims the HHSA's official determination and

penalty assessment were based on false statements provided by Defendant.  Specifically, Plaintiff

alleges the following statements made by Defendant to the HHSA are untrue: that Plaintiff had

been reassigned on November 25, 20515; and that Plaintiff had no authority or business need to

access patient records on that date as a result of the reassignment.  The Court agrees with

Defendant that such statements are privileged under state law.  See Cal. Civil Code § 47(b); see

also Martin, 51 Cal. App. 3d at 311.

Defendant's motion to dismiss should be granted as to Plaintiff's seventh claim

insofar as that claim is based on statements made to the HHSA/CDPH, which aspect of the

seventh claim should be dismissed with prejudice for failure to state a claim.

d.      Statements Made to Cal Fire

Defendant contends Plaintiff cannot state a claim based on statements made to Cal

Fire because such a claim is time-barred, the statements are substantially true, and the allegations

are too vague and conclusory.  According to Defendant:

> BAILEY alleges that after he appeared at ENLOE's
> hospital facility in his firefighter uniform in an attempt to schedule an
> appointment to meet with ENLOE's CEO and an Emergency Room
> physician in February 2016, an ENLOE employee contacted Cal Fire
> Chief McFadden and reported that BAILEY had "'attempted to gain
> access' to the facility wearing his firefighter uniform." ECF 61, ¶¶ 223,
> 224. BAILEY filed the instant civil action on December 11, 2017. ECF
> Dkt. 1. Even assuming BAILEY's defamation/slander causes of action
> qualified for relation back, the alleged communications fall well outside
> the one-year statute of limitations. Cal. Civ. Proc. Code § 340(c).
> Moreover, the communication was true. See Maldonado, 72 Cal. App. 4th
> at 646-647 (substantial truth is a complete defense to liability). BAILEY
> admits that the appeared ENLOE's hospital facility in his firefighter

1   uniform in an attempt to schedule an appointment to meet with ENLOE's
    CEO and an Emergency Room physician. ECF 61, ¶ 224.
2
            [BAILEY f]urther alleges that some unknown employee,
3   agent, or representative of ENLOE accused BAILEY of "fraudulently
    donning of the firefighter's uniform and unauthorized entry into the
    hospital" in an unknown oral or written communication (by speech, email,
4   fax or some unknown means) to some unknown person at the local
    community fire department [at] some unknown point in time. *Id.* at ¶¶
5   308-309, 315-316. These vague, conclusory allegations fail to state a
    plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S.
6   544, 555 (stating a plausible entitlement to relief "requires more than
    labels and conclusions" and that the "[f]actual allegations must raise a
7   right to relief above the speculative level").

8           ECF No. 62, pgs. 19-20.

9           In his seventh claim, Plaintiff alleges that Defendants made various false

10  statements to Cal Fire through its agents and that such statements resulted in the loss of his job as

11  a volunteer firefighter.  See ECF No. 61, pgs. 44-47.  According to Plaintiff, Defendant or its

12  agents "representatives intentionally and maliciously published (by speech, email, fax or some

13  unknown means) statements that caused PLAINTIFF to lose his position as a volunteer

14  Firefighter for Butte County with Cal Fire. PLAINTIFF."  Id. at 44.  Plaintiff adds: "PLAINTIFF

15  is informed, believes and thereon alleges that DEFENDANT and/or it's [sic] agents or

16  representatives falsely accused PLAINTIFF of "*fraudulent[ly] donning of the firefighter's*

17  *uniform, and unauthorized entry into the hospital*"; without any factual basis to imply the uniform

18  was "fraudulent[ly]" obtained."  Id. (italics in original).  Plaintiff also states: "DEFENDANT

19  and/or its agents or representatives published in oral and written communication to the local

20  community fire department that ultimately lead to dismissal from his career as a volunteer

21  firefighter" and "[f]urther, DEFENDANT and its agents or representatives published in oral,

22  telephonic, email, fax, or yet to be disclosed communication that PLAINTIFF 'unauthorized

23  entry' into EMC by '*fraudulently donning*' a firefighters uniform'"  Id. at 45 (italics in original).

24          The Court rejects Defendant's argument that the statements are substantially true.

25  While Plaintiff may have admitted that he was wearing a firefighter uniform when he appeared at

26  Enloe Medical Center to schedule an appointment, this does not establish that he was wearing the

27  uniform "in an attempt to schedule" the appointment, as Defendant suggests.  Moreover,

28  Defendant's argument does not address other allegedly false statements that Plaintiff says caused

him to lose his position with Cal Fire.  Plaintiff alleges Cal Fire was told his entry to the hospital was "unauthorized," an allegation Defendant's argument does not address.  Defendant also does not address Plaintiff's allegation that Defendant's representation that Plaintiff had "fraudulently" donned a firefighter's uniform is false.  Plaintiff's admission that he was wearing a firefighter's uniform when he attempted to schedule an appointment at the hospital does not establish the truth of the statements allegedly made by Defendant through its agents.

As to application of the one-year statute of limitations to this claim, Defendant states Plaintiff appeared at the hospital wearing a firefighter's uniform in February 2016.  Apparently using this as the accrual date, Defendant concludes the complaint filed in December 2017 is untimely.  While it is not known when the allegedly defamatory statements were made to Cal Fire, it is reasonable to presume that the latest date Plaintiff's claim based on such statements could accrue would be the date Plaintiff learned that he lost his volunteer firefighter job.  This date, however, is not shown in the second amended complaint.  Therefore, there is no way for this Court to calculate whether Plaintiff's claim is timely.

Defendant's last argument is more persuasive.  Defendant contends Plaintiff's allegations are too vague and conclusory to state a claim for relief.  The Court agrees.  As Defendant notes, Plaintiff alleges that some unknown form of communication was published to an unknown person or persons at an unknown point in time.  Further, as discussed above, Plaintiff does not allege when he learned the statements had been made or when he lost his volunteer firefighter position.

Defendant's motion to dismiss should be granted as to Plaintiff's seventh claim insofar as that claim is based on statements made to Cal Fire, which aspect of the seventh claim should be dismissed with leave to amend.

/ / /

/ / /

/ / /

/ / /

/ / /

2.     Eighth Claim

In his eighth claim, Plaintiff alleges the following facts:

1.     Defendant "slanderously accused PLAINTIFF of violating the Public[] Trust by falsely alleging that the PLAINTIFF inappropriately accessed protected patient information without authorization or for reasons other than treatment, payment, or healthcare operations." ECF No. 62, pg. 48.

2.     Defendant "fraudulently and slanderously described PLAINTIFF as a gun-owning hunter alluding that unnamed sources felt PLAINTIFF might be a threat while attempted to 'paint a concerning picture.'" Id.

3.     Defendant "falsely claims without any proof or factual basis that PLAINTIFF was witnessed near the medical facility while wearing scrubs on an unspecified date or location." Id.

4.     Defendant "fraudulently and slanderously claimed PLAINTIFF went 'rogue' when accessing ER patient information despite the phone record time stamps and computer access records correlating to give PLAINTIFF specific reason and cause for access to pertinent patient information." Id.

Defendant argues the eighth claim should be dismissed because it is time-barred, the alleged statements do not have a tendency to cause injury, and the alleged statements are true. See ECF No. 62, pgs. 20-21.

The Court finds the eighth claim should be dismissed, not for the reasons outlined by Defendant, but because the claim is subsumed within his seventh claim and is, therefore, duplicative. As discussed at the outset, Plaintiff's seventh claim is styled as the more general defamation tort claim. The eighth claim is labeled "slander," which is merely defamation by a specific means. Moreover, the eighth claim refers generally to the allegedly defamatory statements Plaintiff more specifically outlines in the seventh claim. These aspects of Plaintiff's pleading reflect a degree of redundancy which, of course, is not held against Plaintiff given his pro se status.

The Court also notes that Plaintiff's motion for leave to amend sought permission to raise a single new claim based on defamation. See ECF No. 50. At the time the motion was filed, Defendant's motion for summary judgment on claims raised in the original complaint had been pending for five months. See ECF No. 32. The proposed amended complaint submitted

27

1    with Plaintiff's motion included a single defamation claim.  See ECF No. 60.  In granting

2    Plaintiff's motion for leave to amend, the Court permitted the single new claim.  See ECF No. 59.

3    Though the Court also dismissed the new claim as deficient because Plaintiff did not identify the

4    allegedly defamatory statements, the Court did not permit Plaintiff further leave to amend carte

5    blanche. See id.  The Court's finding that Plaintiff's eighth claim is duplicative of the seventh

6    claim is consistent with this procedural history.

7              Plaintiff's eighth claim should be dismissed with prejudice as duplicative.

8

9                                   **V.  CONCLUSION**

10             At the time Plaintiff sought leave to amend, Defendant's motion for summary

11   judgment had been pending for several months.  The Court exercised its discretion and permitted

12   Plaintiff to add his defamation allegations in order to provide him a full and fair opportunity to

13   frame his claims.  In doing so, the Court set aside any argument that Plaintiff may have sought leave

14   to amend as a delaying tactic.  While the Court is mindful of its obligation to provide Plaintiff an

15   opportunity to be heard, and for this reason recommends he be granted one more bite at the

16   defamation apple, the Court is also mindful of its obligation to Defendant to avoid undue prejudice

17   resulting from delay, as well as its obligation to the public to provide expeditious resolution of cases

18   before it.  Balancing these interests, the Court finds that it is time for this matter to proceed past the

19   pleading stage and that further amendment should be limited.

20             Based on the foregoing, the undersigned recommends that:

21             1.      Defendant's motion to dismiss, ECF No. 62, be granted;

22             2.      Plaintiff's third, fourth, and fifth claims be dismissed with prejudice;

23             3.      Plaintiff's seventh claim based on statements made to Plaintiff's union

24   representatives, statements made to the California Employment Development Department, and

25   statements made to the California Health and Human Services Agency claim be dismissed with

26   prejudice;

27             4.      Plaintiff's seventh claim based on statements made to Cal Fire be dismissed

28   with leave to amend;

                                          28

5.      Plaintiff's eighth claim be dismissed with prejudice as duplicative; and

6.      Plaintiff be permitted to: (i) file a third amended complaint to cure the defects identified herein as to his seventh claim based on statements made to Cal Fire; or (ii) elect to voluntarily dismiss the remainder of the seventh claim and proceed solely on the first, second, and sixth claims for relief as alleged in the second amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 23, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

29