Ronda Baldwin-Kennedy (SBN #: 302813)
LAW OFFICE OF RONDA BALDWIN-KENNEDY
5627 Kanan Road, Suite 614
Agoura Hills, CA 91301-3358
(951) 268-8977| (702) 974-0147
harveyspecter@lorbk.com

Attorney for Plaintiff

**UNITED STATE DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA-SACRAMENTO DIVISION**

| | |
|---|---|
| **DANIEL BAILEY,**<br><br>     **Plaintiff(s),**<br>vs.<br><br>**ENLOE MEDICAL CENTER,**<br>**and DOES 1 through 50, inclusive**<br><br>     **Defendant(s).** | Case No.: 2:18-CV-00055-KJM-DMC<br><br>NOTICE OF MOTION AND MOTION TO REOPEN DISCOVERY; CERTICATE OF CONFERENCE, MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS 1-10<br><br>Date: Friday, August 17, 2021<br>Time: 10:00 a.m.<br>Crtrm.: 3, 15th Floor<br>Judge: Honorable Kimberly J. Mueller |

**TO DEFENDANTS AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rules of Civil Procedure and Local Rule 230, at 10:00 a.m., Friday, August 17, 2021, or as soon thereafter as can be heard, in Courtroom 3, 15th Floor, of this Court located at 501 "I" Street, Sacramento, California 95814, Plaintiff Daniel Bailey will move this Honorable Court for a Motion to Reopen Discovery.
     This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ronda Baldwin-Kennedy, Esq., the attached exhibits, and the entire records and pleadings in this action.

     Dated: July 26, 2021.          Respectfully submitted,

                              *[signature]*
                              _____
                              BY: Ronda Baldwin-Kennedy
                              *Attorney for Plaintiff*

MOTION TO REOPEN DISCOVERY - 1

**CERTIFICATE OF CONFERENCE**

As required by Federal Rules of Civil Procedure, Rule, I, Ronda Baldwin-Kennedy, Esq., attorney for Plaintiff Daniel Bailey, do herby certify that on May 5, 2021, I made a good-faith effort to Meet and Confer with Defendant's Counsel, Mr. Ropel, by telephone on May 5, 2021. At that conference, it was discussed Plaintiff's intent to depose Ms. Carol Linscheid. Mr. Ropel responded that discovery was closed.

Dated: July 26, 2021.                              Respectfully submitted,

                                                   _____
                                                   BY: Ronda Baldwin-Kennedy
                                                   *Attorney for Plaintiff*

**TABLE OF CONTENTS**


CERTIFICATE OF CONFERENCE 2
TABLE OF CONTENTS 3
TABLE OF AUTHORITIES 4
MEMORANDUM OF POINTS AND AUTHORITIES 5
  **I.**   INTRODUCTION 5
  **II.**  SUMMARY OF FACTS 5
  **III.**  ARGUMENT 6
      1.   Legal Standard 6
      2.   Plaintiff Represented by New Counsel; Defendant will not suffer any undue harm or prejudice if Discovery is Reopened 7
          a.  Factors to Be Considered to Reopen Discovery 9
          b.  The Due Diligence of the Party Seeking to Reopen Discovery 9
          c.  No Undue Prejudice on Defendant 15
          d.  No Impact on Court or Delay of Trial 17
      3.   Court Must Impose Monetary Sanction Absent Specified Findings 18
  **IV.**  CONCLUSION 19

# TABLE OF AUTHORITIES

**Cases**

Associated Brewers Distributing Co. v. Superior Court of Los Angeles County, 65 Cal. 2d 583,
 422 P.2d 332, 55 Cal. Rptr. 772, 1967 Cal. LEXIS 368 (1967) ................................................7

Beverly Hospital v. Superior Court, 19 Cal. App. 4th 1289, 24 Cal. Rptr. 2d 238 (1993)............7

Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. .........................................6

Hunt v. County of Orange, 672 F.3d 606, 2012 ...........................................................................8

Hunt v. Orange Cnty., 672 F.3d 606, 2012. ..................................................................................6

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 1992.......................................................6

Johnson v. Mammoth Recreations, Inc., supra. at 604, 608 .........................................................8

Johnson, supra at 609 ....................................................................................................................8

Johnson, supra. at 609. ..................................................................................................................7

King v. Ryan,  2020 U.S. Dist. LEXIS 33462, 2020 WL 1678226. ..............................................9

Morgal v. Williams, 2015 U.S. Dist. LEXIS 177951 ....................................................................7

Morgal v. Williams, 2015 U.S. Dist. LEXIS 177951 (2015). .......................................................8

Woodard v. City of Menlo Park, supra. .........................................................................................8

Woodward v. City of Menlo Park, 2011 U.S. Dist. LEXIS 21652, 2011 WL 810702 .................6

**Rules**

Cal. Code Civ. Proc. § 2024.050 ...................................................................................................9

Cal. Code Civ. Proc. § 2024.050(a). .............................................................................................6

Fed. R. Civ. P. 16...........................................................................................................................6

Fed. Rule Civ. P. 26(a)(1)..............................................................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The issue before the Court in this Motion to Reopen Discovery for good cause shown for the purpose of deposing seven (7) EMC employees, and one (1) California Department of Public Health employee reserving the right to call others as may be disclosed): (1) Ms. Carol Linscheid, Vice President of Human Resources and Chief Compliance Officer; (2) Ms. Brenda Boggs, the Risk and Compliance Manager/Privacy Officer; (3) Mr. Shawn Fredricks, the (former) Lead CT Technologist on duty the day of the alleged privacy breach; (4) Dr. Ken Petty M.D. and Lead Radiologist; (5) Dr. James Moore, ER M.D. and Chief of Staff; (6) EMC Chief Medical Officer Connie Rowe; (7) EMC, CEO Mike Wiltermood; and (8) Ms. Danielle Turner, Special Investigator Medical Breach Enforcement Unit that investigated Bailey's alleged privacy breach. Each of these witnesses are percipient witnesses.

Three of the proposed deponents—Linscheid, Boggs, and Fredricks were actively choosing **willful blindness** to cover-up Plaintiff's raising a red flag (**whistleblowing action**) when he reported a patient safety concern which led to **retaliation and wrongful termination**. Linscheid is rumored to be retiring and may leave the area, thus potentially not being available for trial creating a clear need to preserve her testimony. Fredricks is out on permanent medical disability leave and may not be available for trial; again, it is necessary to preserve his trial testimony. Boggs, who investigated Plaintiff's alleged privacy breach, has relevant, key material facts involving Plaintiff's needed for trial preparation. (Exhibit 1: Declaration of Ronda Baldwin-Kennedy)

## II.     SUMMARY OF FACTS

This case involves employment discrimination claims, including but not limited to wrongful termination and retaliation under California Labor Codes and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and federal whistleblower protection statutes, whereas Plaintiff was wrongfully terminated and retaliated against for his whistleblowing

1  action—reporting a serious patient safety concern. (Exhibit 2).

2      This Honorable Court is only aware the initial disclosures outlined in Federal Rule of Civil Procedure 26(a)(1) that were exchanged on June 14, 2018. (ECF 15). Defendant has provided multiple separate disclosures on the following dates: (1) February 26, 2018, bates stamped D000001-D001087; (2) September 20, 2018, a supplemental disclosure bates stamped D0001088-D001091; (3) October 24, 2018, second supplemental bates stamped D001092-D001103; (4) February 3, 2018, supplemental disclosure bates stamped D001104-D001488; (5) May 10, 2019, supplemental disclosure bates stamped D001489-D001504 bates stamped D001489-D001493; (6) July 18, 2019, supplemental disclosure bates #D001506-D001535; and (7) July 25, 2019, supplemental disclosure bates stamped 1536-1587.

    It was not until the May 10, 2019, disclosure that Defendant's Counsel egregiously and in bad faith finally disclosed proof of an existing allergy to IV contrast listed in a patient's chart which was the root cause for Plaintiff's whistleblowing action that led to his wrongful termination.

### III.    ARGUMENT

**A.    PLAINTIFF CLEARLY SHOWS GOOD CAUSE TO REOPEN DISCOVERY**

    **1.    Legal Standard**

    Both Federal Rules of Civil Procedure and California Code of Civil Procedure allow for modification of a scheduling order and re-opening discovery for "good cause." *Fed. R. Civ. P. 16; Cal. Code Civ. Proc. § 2024.050(a).*

    The Court have held that in diversity cases, federal courts must follow substantive law of the state in which it sits. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. A pre-trial scheduling order may be modified "upon a showing of good cause." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 1992; also see Fed. R. Civ. P. 16(b)(4) (providing that the scheduling order "may be modified only for good cause and with the judge's consent"). District courts have broad discretion to manage discovery pursuant to Fed. R. Civ. P., Rule 16.

MOTION TO REOPEN DISCOVERY - 6

Hunt v. Orange Cnty., 672 F.3d 606, 2012. Courts have found good cause to re-open discovery when newly appointed Counsel represents a previously unrepresented prisoner Plaintiff during a pending case. Woodward v. City of Menlo Park, 2011 U.S. Dist. LEXIS 21652, 2011 WL 810702 (re-opening discovery for newly represented Plaintiff to conduct depositions and designate a medical expert); also see Morgal v. Williams, 2015 U.S. Dist. LEXIS 177951 (granting Plaintiff's request to re-open discovery following the appointment of pro bono counsel, despite prior order limiting representation to existing claims and discovery). In assessing good cause under Rule 16, courts primarily consider "the diligence of the party seeking the amendment." Johnson, supra. at 609**Error! Bookmark not defined.**. "Although the existence ... of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." Id.

"Good cause" may be found to justify discovery where specific facts show that the discovery is necessary for effective trial preparation or to prevent surprise at trial." *Associated Brewers Distributing Co. v. Superior Court of Los Angeles County, 65 Cal. 2d 583, 422 P.2d 332, 55 Cal. Rptr. 772, 1967 Cal. LEXIS 368 (1967)*. Statutes setting time limitations on discovery must be construed consistently with overall purposes of discovery, which are to assist parties and trier of fact in ascertaining truth, to encourage settlement by educating parties as to strengths of their claims and defenses, to expedite and facilitate preparation and trial, to prevent delay, and to safeguard against surprise. *Beverly Hospital v. Superior Court, 19 Cal. App. 4th 1289, 24 Cal. Rptr. 2d 238 (1993).*

**2. Plaintiff Represented by New Counsel; Defendant will not suffer any undue harm or prejudice if Discovery is Reopened**

Plaintiff's new Counsel, Ronda Baldwin-Kennedy, Esq. filed substituted in on this case by consent order signed by Plaintiff Daniel Bailey on April 6, 2021. On May 11, 2021, the order was signed and subsequently filed on May 20, 2021. (ECF 87) Bailey had proceeded Pro Se for the majority of this matter, other than a few months.

MOTION TO REOPEN DISCOVERY - 7

Plaintiff's new Counsel needs time and materials to properly prepare for trial of the merits in this matter. Further, Plaintiff's new counsel has discovered that Plaintiff may not have received all the critical material facts in this matter in earlier discovery. Further, it also appears neither party disclosed nor designated any witnesses they intend to use in the trial. The Court held in Woodward v. City of Menlo Park that the added cost of litigation was substantially outweighed by Plaintiff's need to engage in discovery to prepare for trial. *Woodard v. City of Menlo Park, supra.*

The Courts have held that a pre-trial scheduling order may be modified "upon a showing of good cause." *Johnson v. Mammoth Recreations, Inc., supra. at 604, 608*; also so see *Fed. R. Civ. P. 16(b)(4)* (providing that the scheduling order "may be modified only for good cause and with the judge's consent"). District courts have broad discretion to manage discovery pursuant to Rule 16. *Hunt v. County of Orange, 672 F.3d 606, 2012*. Courts have found good cause to re-open discovery when newly appointed Counsel represents a previously unrepresented prisoner plaintiff during a pending case. *Woodard v. City of Menlo Park, supra. (r*e-opening discovery for newly represented Plaintiff to conduct depositions and designate a medical expert); also see *Morgal v. Williams, 2015 U.S. Dist. LEXIS 177951 (2015).* (granting Plaintiff's request to re-open discovery following appointment of pro bono counsel, despite prior order limiting representation to existing claims and discovery). In assessing good cause under Rule 16, courts primarily consider "the diligence of the party seeking the amendment." *Johnson, supra at 609.* "Although the existence ... of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*

Plaintiff has shown good cause to modify the scheduling order to re-open discovery for the limited purposes of conducting necessary depositions and designating a medical expert. Like the plaintiffs in Woodard and Morgal, although Plaintiff made efforts to obtain and conduct discovery while he was proceeding pro se; his efforts were limited by his lack of legal training or

MOTION TO REOPEN DISCOVERY - 8

guidance. While Defendants will suffer some undue prejudice as a result of re-opening discovery, the focus of the Court's inquiry is on Plaintiff's diligence and his reasons for requesting modification. *King v. Ryan,* 2020 U.S. Dist. LEXIS 33462, 2020 WL 1678226.

### a.     Factors to Be Considered to Reopen Discovery

In exercising its discretion to grant leave to reopen discovery, the Court is required to take into consideration any matter relevant to the leave requested, including but not limited to the following: (1) The diligence of the party seeking the to re-open discovery; (2) Any likelihood, or absence thereof, that permitting the re-opening of discovery will prevent the case from going to trial on the day set, or otherwise interfere with the trial calendar, or result in prejudice to any other party; and (3) The length of time that has elapsed between the date(s) previously set, and the date presently set, for the trial of the action. *Cal. Code Civ. Proc. § 2024.050.*

### b.     The Due Diligence of the Party Seeking to Reopen Discovery

Plaintiff has largely proceeded Pro Se in this matter, and, as the record reflects, has been diligent in prosecuting this matter with his limited knowledge of the legal process civil discovery procedures. He also has been hindered with his time due to COVID-19 pandemic and his employment status. Plaintiff has been unduly prejudiced, at least in part, by the bad faith seven (7) initial discloses being strung out to merely delay and take advantage of Plaintiff's legal inexperience. Plaintiff believes all the items disclosed in the late disclosures were available and required to be disclosed at the onset of this case. *Id.*; also *Fed. Rule Civ. P. 26(a)(1).* Initial disclosures were exchanged in this case on June 14, 2018.

Again, It was not until the May 10, 2019 disclosure that Defendant's Counsel egregiously and in bad faith finally disclosed proof of an existing allergy to IV contrast listed in a patient's chart which was the root cause for Plaintiff's whistleblowing action that led to his wrongful termination.

Thus, Plaintiff further argues that re-opening discovery is warranted as he was previously unrepresented and therefore had to conduct discovery without legal expertise.  Plaintiff has not

MOTION TO REOPEN DISCOVERY - 9

yet obtained depositions of percipient witnesses nor had the expertise to understand whether a medical expert would be necessary. Plaintiff argues that further discovery, including depositions and a medical expert, would be in the interest of justice.

Example **1:**

In an email from Carol Linscheid, Vice President Human Resources/Chief Compliance Officer, sent to Mike Wiltermood, CEO of Enloe Medical Center where Ms. Linscheid stated:

> I think you are not here today so letting you know we finalized our investigation of privacy breach with Dan Bailey, Tech Assistant it CT. The audit covered the dates of Nov 25 – 29. We found consideration for record access on Nov 26-29 to reasonably be for purposes of treatment or operations but on Nov 25 Dan was assigned to the front desk with other Tas assigned to the Techs who were working that day. No part of his assignment included patient care. Dan accessed nine patients during period, and these represent reportable privacy breaches. We will report today, and I am finalizing his Discharge Counseling and terminate his employment. I know you were aware it was likely we were terminating him and that you agreed if the investigation turned out the way it appeared to be going. We will likely experience a fine of $250,000 and it is possible Dan will be fined up to $350,000." (Exhibit 3)

What was not disclosed was any witness or evidence that will be introduced to prove (1) that Plaintiff was legally reassigned by a person with authority to reassign Bailey; (2) also not disclosed is who is the witness(s) that "no part of his [Bailey's] assignment included patient care."; (3) also not disclosed was the witness(s) or evidence Plaintiff's accessed the patients for other than "patient treatment" or "hospital operations"; (4) also not disclosed is the witness(s) that could testify Plaintiff was given notice that he was technically reassigned; (5) also not disclosed is the witness(s) that will testify Plaintiff was relieved of his normal duties; and (6) also not disclosed was the witness(s) that would have given him a due process notice warning that he could not access the ECF electronic patient care system. Nor did they notice him if he did access it, he would be violating the EMC Code of Conduct and charged with a HIPAA violation and terminated from his approximately eleven (11) years employment with EMC. Further, it appears there were additional communications (from unknown persons) to CEO Mike Wiltermood that PLAINTIFF has not received in discovery when Ms. Linscheid states, "I know you were aware

it was likely we were terminating him."

**Example 2:**

EMC self-reported a privacy breach has occurred. The complaint (#CA00469431) was filed by the EMC, with the State of California—Health and Human Services Agency, California Department of Public Health. (Exhibit 4). As noted in the email communication between Ms. Carol Linscheid and EMC's CEO, Mike Wiltermood discussed she announced in its pertinent part: "[w]e will report today … [w]e will likely experience a fine of $250,000 and possibly Dan will be fined up to $350,000." This was the complaint that was investigated by Danielle Turner, who issued her handwritten report on August 19, 2016. The final report came out on January 27, 2017. On July 17, 2017, Connie Rowe signed a report that contained materially false information. On September 7, 2021, the California Department of Public Health assessed a final penalty amount of $50,000 stating in its pertinent part: "[t]he employee [Bailey] accessed the records of the five patients he was not treating, nor did he have written authorization or a business need."

This of course, is a materially false statement (finding) Plaintiff was on duty the entire day and was not reassigned, as alleged by Mr. Fredricks, the employee that Plaintiff blew the whistle on. Plaintiff reports that it is rumored that EMC has now appealed the fine.

Plaintiff believes further discovery regarding all communications, reports, emails, faxes and pleadings regarding this appeal will likely lead to the source of the States finding Bailey "accessed the records of the five patients he was not treating, nor did he have written authorization or a business need." The alleged privacy breach hinges on four key points (1) was he technically reassigned by a person authorized to reassign Plaintiff; (2) was he reassigned to a different department; (3) was he connected in any way to patient care; and (4) has there been a systematic cover-up of the retaliation against Bailey for fulfilling his duty to report misconduct regarding a real patient safety concern. Plaintiff believes EMC's Ms. Linscheid, Ms. Connie Rowe, and the State of California's Ms. Danielle Turner ALL hold key discoverable information that may lead to a settlement or assist in preparation for trial on the merits.

**Example 3:**

For example, but not limited to, in the last batch of discovery provided by Defendant on July 25, 2019, Plaintiff learned that: "[T]he Union learned from the employer about [redacted (b)(c)] fraudulently donning of the firefighter's uniform, and unauthorized entry into the hospital." (Exhibit 5). What has not been disclosed is who specifically informed the Union, the source of the belief (meaning witness(s) or evidence) of Plaintiff's "fraudulently donning of the firefighter's uniform, and unauthorized entry into the hospital." In other words, who is the witness(s) that states Plaintiff allegedly gained "unauthorized entry" verses lawful entry through the front door to meet with hospital staff? Who specifically was informed in the Union?

Plaintiff called ahead and scheduled to meet with an Emergency Room doctor, hoping they could meet together with the CEO, Mike Wiltermood, to discuss his concern, regarding the threat to an elderly woman he had treated in an accident (as an on-duty fireman) with a neck injury that was sent to Enloe. Plaintiff knew she might be treated by the same Mr. Fredricks that Plaintiff had reported the patient safety concern. This was a genuine effort on the part of Bailey to protect the hospital, hospital patients, and his community by raising awareness to the CEO that EMC Investigators (Linscheid, Boggs) who were choosing **willful blindness** to a significant patient safety concern. This could hardly be considered a mischievous act or considered an "unlawful entry" using a fireman uniform to sneak in, evidencing an evil intent. He was a volunteer fireman. It appears that the false allegation that Plaintiff "fraudulently" donned a "firefighters' uniform" was a pivotal factor in reversing SEIU-UHW second Appeal Panel's second final decision.

**Example 4:**

Plaintiff believes there may be some collaboration between EMC upper management and the SEIU staff, presenting misinformation or false statements revolving around Plaintiff's termination. In an email dated May 26, 2016, from Carol Linscheid, Enloe Medical Center's Vice President Human Resources/Chief Compliance Officer, to Marcus Hatcher, SEIU's Director of

MOTION TO REOPEN DISCOVERY - 12

Representational Excellence which states in its pertinent part:

> Dan reviewed records of a number of patients for whom he was not involved in treatment, payment, or operations despite repeated training … Staff also expressed concern that Dan had previously shared that he owned fire arms. No one has ever reported that Dan mentioned this in any other context except hunting and never made threats but the language of the text and the access to guns made some staff very nervous … Two or three weeks ago, Dan was seen coming out of Cal Java, a coffee shop directly across the street from the hospital. He was wearing scrubs. He walked up the street and disappeared from view. He doesn't appear to be employed and so why wear scrubs so close to the hospital?... Taken altogether, a rather concerning picture forms. (Exhibit 6).

None of this has anything to do with whistleblowing event that led to Plaintiffs unlawful termination without cause, good cause, or just cause. It is clear that Ms. Linscheid was painting a negative picture. She had a duty to keep all information in Bailey's employment file and keep the investigation confidential. Mr. Hatcher was not Plaintiff's local Union representative, so the motivation is questionable. Again, what has not been disclosed is any witness(s) or evidence to support the false or misleading half-truths in this communication. What has not been disclosed is the witness(s) that will be called to testify that Plaintiff "was not involved in treatment, payment, or operations" on that day? What has not disclosed who the witness(s) that will be called to testify Plaintiff allegedly accessed the private medical records for his own purpose? Additionally, what has not been disclosed is the witness(s) who allegedly saw Bailey "coming out of Cal Java … wearing scrubs." Plaintiff has not worn scrubs since his wrongful termination; thus, this appears to be a complete fabrication.

It appears clear Ms. Linscheid was intentionally painting a negative picture, mocking (defaming) Plaintiff for his diligent effort to uphold an unwavering focus on patient safety pursuant to EMC Code of Conduct and clear his good name. Plaintiff believes depositions of critical witnesses will pinpoint misinformation, half-truths, better prepare Plaintiff for a trial on the merits.

Reopening discovery could identify DOE defendants by deposing witnesses such as EMC's Carol Linscheid and SEIU's Marcus Hatcher, and California Department of Public Health

MOTION TO REOPEN DISCOVERY - 13

1  Special Investigator, Ms. Danielle Turner, who investigated the alleged HIPAA privacy breach
2  by Plaintiff and who was provided materially false and misleading testimony from EMC staff
3  during her investigation. Additional fact discovery will help bolster Plaintiff's defamation cause
4  of action, which the Court noted was weak. (ECF 75 at p. 29)

**Example 5:**

Another failed disclosure involves Plaintiff' appeal to SEIU-UHW Arbitration Appeal Panel. In a letter dated April 27, 2016, the SEIU appeal board held in its final decision that the case should go arbitration. The panel stated in its pertinent part:

> Based on the statements and documents you provided, and the fact that your employer failed to provide just cause for termination, we believe you were unjustly disciplined … We understand that this has been a challenging situation, but based on all the information presented to us, this panel has determined that your case should advance to arbitration. According to the guidelines of the Executive Board, this decision is final. (Exhibit 7)

Subsequently, in a second letter dated July 19, 2016, Plaintiff was notified that the SEIU-UHW Arbitration Appeal Panel reversed its final decision, denying Plaintiff the right to go to arbitration. The letter stated in its relevant parts:

> During the hearing it was determined that your case lacked merit for continuing through our process. The panel raised high concerns around actions that took place post your termination. Since your termination, the unsanctioned visits to the hospital were inappropriate. The fact that you showed up to the hospital to attempt to raise issues around your case, outside the sanctioned process, causes concern for proceeding with your case. When entering into the facility with a firefighter uniform, when you were not on duty, was completely inappropriate. Accessing the building in the way that you did, coupled by the way you engaged the HUM= Resources department with your email, causes us to deal with character issues that are easily substantiated by the employer. (Exhibit 8)

Notably suspicious is the timing of the email dated May 26, 2016, from Ms. Linscheid to Mr. Hatcher. It appears to be clear, Ms. Linscheid's email was the key factor that triggered the SEIU-UHW second Appeal Panel to reverse its previous final decision. The first ruling came out on May 6, 2016. (Exhibit 7). The Linscheid email on May 26, 2016 (Exhibit 6) and the SEIU-UHW Appeal reversal came on July 19, 2016. (Exhibit 8). Defendants have failed to disclose the

MOTION TO REOPEN DISCOVERY - 14

source of the information or communication that both the first and second appeal panel was provided.

Marcus Hatcher (SEIU upper management) was sued during this same period and has been reported that "Court: SEIU-UHW Officials Must Stand Trial for Failing to Represent Union Member." The report goes on to say:

> SEIU-UHW has suffered yet another embarrassing legal judgment for failing to back its own members. Earlier this week, the Ninth Circuit Court of Appeals in California ordered SEIU-UHW officials to stand trial for denying basic union representation to one of its members, which caused her to lose her job of more than 20 years. Elsewhere on this blog, Tasty has catalogued countless instances of SEIU-UHW's backroom deals with hospital bosses and its failure to defend workers' rights on the job."

> "1) Within the previous six months, the above-named labor organization has restrained and coerced employees in the exercise of rights protected by Section 7 of the Act by refusing to process the Charging Party's grievance for arbitrary or discriminatory reasons or in bad faith." [Emphasis added] (Exhibit 9).

This case has been sealed. Could it be that Carol Linscheid (EMC, upper management) and Marcus Hatcher (SEIU-UHW's upper management) colluded off the record, similar to the report on the blog site "Stern Burger with Fries"? (Exhibit 10).

Plaintiff has been the victim of retaliation as the result of reporting a severe patient safety concern and reopening discovery will unveil crucial additional information necessary to defend his wrongful termination claims on the merits.

Lastly, at the end of Plaintiff's deposition, he informed Defendants' Counsel, Mr. Ropel and Ms. Barbara Blackburn, that he intended to file an amended complaint when discovery closed. Plaintiff reasonably believes it would have been judicially economical if Defendants' had waited for Bailey's first amended complaint rather than attach the original complaint in summary judgment and then attached the second amended Complaint with a motion to Dismiss.

### c.  No Undue Prejudice on Defendant

Defendants have stated they will oppose any motion to reopen discovery. While Defendant may suffer some undue prejudice by reopening discovery, such as additional litigation costs, the benefits and in the interest of justice to Plaintiff's case outweigh that prejudice. King v.

Ryan (D. Ariz., Nov 20, 2019, No. CV-16-00259-TUC-RM) 2019 WL 6170369, at *3) In this case, the Court held that Plaintiff had shown good cause to modify the scheduling order to reopen discovery for the limited purposes of conducting necessary depositions and designating a medical expert. Like the plaintiffs in Woodard and Morgal, although Plaintiff made efforts to obtain and conduct discovery while he was proceeding pro se, his efforts were limited by his lack of legal training or guidance.

Reopening limited discovery for Plaintiff's new Counsel to obtain additional facts should have little to no negative effect as this matter, since as Defendant's counsel stated: "[t]his matter has been pending before this Court for several years and is now locked in a second pleading stage." (ECF 84 at p. 3, ln. 2).

There have been three large blocks of time spanning several years involving pre-trial proceedings as the proximate cause of the Defendant's dilatory tactics. First, a delay was the result of Defendant's bad-faith and unsuccessful effort to keep Plaintiff's assistant, his father, out of Plaintiff's deposition (which was presumed to open to the public extension of trial). Thus, the deposition was canceled by Defendant's Counsel, Mr. Ropel, triggering a flurry of motions starting with ECF 17, filed on January 22, 2019, and ending on May 19, 2019, with an Order signed by Magistrate Dennis M. Cota allowing Plaintiff's father to be present and to video record the deposition. (ECFs 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28 and 29) The second delay was caused by Defendant's unsuccessful Motion for Summary Judgement, which was stricken after the Court granted Plaintiff leave to amend. (ECF 59) The third delay was Defendant's pending Motion to Dismiss, delaying Defendant's answer and Plaintiff's second amended complaint. (ECFs 62 through 84). Defendant's Motion to Dismiss was partly granted by the Honorable Magistrate finding that federal law governs the statute of limitations in this action. The magistrate's ruling is currently under review by the presiding Chief District Judge Kimberley J. Mueller.

### d. No Impact on Court or Delay of Trial

Reopening discovery will have no delaying effect in this matter as there is no scheduled trial date at this time. On February 15, 2019, the Honorable Magistrate Dennis M. Cota issued an order modifying the "Status (Pretrial Scheduling) Order and vacating the August 19, 2019, Pretrial Conference and the September 23, 2019, trial pending further order of the Court. Discovery originally closed on May 17, 2019. All other pre-trial motions, including dispositive motions, were to be filed by June 28, 2019. (ECF 22 at pp.7-8). Then on May 21, 2019, the parties stipulated to a modification of the scheduling order and the Court granted the change in scheduling order. That order reset the close of discovery from May 17, 2019, to July 26, 2019, and pretrial motions from June 28, 2019, to September 20, 2019. (ECF 29 at pp. 5-6).

Then on May 28, 2020, the Court reopened the pleading stage of this litigation. The Court stated: "the matter is no longer at issue on Plaintiff's original complaint and, as a result, defendant's motion for summary judgment (ECF 32) based in claims raised in the original complaint is no longer properly before the Court and is stricken …" (ECF 59 at p. 5). The Court further stated: "[u]pon the filing of an answer to any second amended complaint, the Court will issue an order re-opening discovery as to the new defamation claim only and setting new dispositive motion filing deadline."

On February 23, 2021, (ECF 75), the Honorable Dennis M. Cota made Findings and Recommendations regarding Defendant's motion to dismiss Plaintiff's second amended complaint. (ECF 62). The summary of the Court findings in pertinent part is as follows:

> "The Court finds that it is time for this matter to proceed past the pleading stage and that further amendment should be limited. Based on the foregoing, the undersigned recommends that:
>
> Defendant's motion to dismiss, ECF No. 62, be granted;
>
> Plaintiff's third, fourth, and fifth claims be dismissed with prejudice;
>
> "Plaintiff's seventh claim based on statements made to Plaintiff's union representatives, statements made to the California Employment Development Department, and statements made to the California Health and Human Services Agency claim be dismissed with prejudice;

MOTION TO REOPEN DISCOVERY - 17

> "Plaintiff's seventh claim based on statements made to Cal Fire be dismissed with leave to amend;
>
> "Plaintiff's eighth claim be dismissed with prejudice as duplicative; and
>
> "Plaintiff be permitted to: (i) file a third amended complaint to cure the defects identified herein as to his seventh claim based on statements made to Cal Fire; or (ii) elect to voluntarily dismiss the remainder of the seventh claim and proceed solely on the first, second, and sixth claims for relief as alleged in the second amended complaint."

Litigation activities were also paused by stipulation due to the Camp Fire and, lastly, the parties and the Court have suffered delays from the courthouse closure due to the COVID19 pandemic. Thus, it cannot be argued the pending motion to re-open discovery will interrupt the pleading stage and/or trial schedule.

### 3.     Court Must Impose Monetary Sanction Absent Specified Findings

The Court must impose a monetary sanction under Cal. Code of Civil Proc. § 2023.010, et seq. against any party, person, or attorney who unsuccessfully opposes a motion to extend or reopen discovery, unless it finds that the party subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. Code Civ. Proc. §§ 2023.030(a), 2024.050.

### IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests Plaintiff's Motion to Reopen Discovery be granted.

Dated: July 26, 2021.

Respectfully submitted,

_____
BY: Ronda Baldwin-Kennedy
Attorney for Plaintiff